KC **F I L E D**

JUL 2 3 2007

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION**

CHRISTOPHER BILEK and )
MARY BILEK, )
                          )
      Plaintiffs, )    JURY DEMAND
                          )
    v. )   **07CV4147**
                          )   **JUDGE ST EVE**
AMERICAN HOME MORTGAGE )   **MAGISTRATE JUDGE BROWN**
SERVICING INC. )
      Defendant. )

## COMPLAINT

### INTRODUCTION

1.    Plaintiffs, Christopher Bilek and Mary Bilek, bring this action seeking redress against American Home Mortgage Servicing Inc., for violations of the Cranston-Gonzales amendments to the Real Estate Settlement Procedures Act, 12 U.S.C. §2605 et seq as well as for breach of contract.

### JURISDICTION

2.    This lawsuit is being brought pursuant to 12 U.S.C. §2605 et seq. As such, this Court has jurisdiction under 28 U.S.C. §1331 (general federal question) and 28 U.S.C. §1367 (supplemental jurisdiction). Venue in this District is proper because defendant does business here.

### PARTIES

3.    Plaintiffs, Christopher Bilek and Mary Bilek are residents of Illinois and resides in this District.

4.    Defendant, American Home Mortgage Servicing Inc.("American Home Mortgage") is a Maryland Corporation, which is a wholly owned subsidiary of American Home Mortgage Investment Corp, which is organized as a real estate investment trust.

5.    Defendant, American Home Mortgage serviced 197,000 loans as of

December 31, 2006.

6.      American Home Mortgage services numerous loans which are "federally related mortgage loans" as defined in 12 U.S.C. §2602, in that they are secured by a lien on residential real property designed principally for the occupancy of from one to four families, and in that they are made by "creditors" which make or invest in residential real estate loans aggregating more than $1,000,000 per year.

## GENERAL FACTUAL ALLEGATIONS

7.      Plaintiffs own three properties with one of the properties being their primary residences. These properties are plaintiffs entire investments.

8.      On December 21, 2005 plaintiffs took out an adjustable rate loan for the property located on 78th Ave., Bridgeview, Il 60455 with American Home Mortgage Acceptance, Inc.

9.      On December 21, 2005 plaintiffs took out an adjustable rate loan for the property located on West Victory Lane, Watseka, Il 60970 with American Home Mortgage Acceptance, Inc.

10.     In 2006, plaintiffs took out two separate an adjustable rate loans for the property located on North Everett, Streator Il 61364.

11.     All of these loans are being serviced by American Home Mortgage.

12.     Each of these loans either had an insurance escrow at the origination of the loan or an insurance escrow was subsequently created wherein plaintiffs pay a portion of their monthly payment into these escrows so that defendant would pay their insurance premium from these funds.

13.     Shortly after defendant stared servicing their loans, plaintiffs experienced a variety of servicing errors with defendant.

2

14.     Plaintiffs attempted to refinance their loans with another company to get away from defendant. Yet, plaintiffs were unable to refinance as defendant was wrongfully reporting to the credit bureaus that they were delinquent on these loans.

**SERVICING ERRORS**

15.     In February of 2006, plaintiffs were charged late fees in error as well as over charged for insurance. In April of 2006, these issues were purportedly corrected after much effort by plaintiffs.

16.     Subsequently, defendant misreported the loans as delinquent to the credit bureaus and again stated that plaintiffs were late in their payments.

17.     After more time spent by plaintiffs, defendant sent plaintiffs a facsimile on January 2, 2007 stating that the credit reports would be corrected.

18.     Shortly thereafter, defendant asserted that plaintiffs missed all of their January 2007 loan payments, but one.

19.     Plaintiffs sent defendant a facsimile, informing defendant that plaintiffs made all of the loan payments at the same time and plaintiffs paid each loan by separate check, but put all of the checks in the same envelope. The fact that defendant posted one of the payments was proof that it received all of the payments.

20.     Defendant did not responded to plaintiffs' facsimile in writing or correct the account as required.

**FORCED PLACE INSURANCE**

21.     Defendant has sent plaintiff notices that they have failed to pay their insurance premiums and provide proof of insurance.

22.     Yet, each of these loans have an insurance escrow wherein plaintiffs pay a

3

portion of their monthly payment into these escrows so that defendant would pay their insurance premium from these funds.

23.     On March 16, 2007, defendant sent letter stating that there was no insurance.

24.     Plaintiffs telephoned defendant and was informed the issue would be corrected.

25.     In May of 2007 Allstate informed plaintiff that defendant failed to pay the insurance premium from the escrow as required.

26.     On May 7, 2007, plaintiff faxed defendant a letter stating it failed to pay the insurance premium.

27.     Defendant has not responded to this letter as required by RESPA.

28.     On June 19, 2007, Allstate sent letter stating insurance was in place the entire period.

29.     For the property on Evert Street, Allstate renewed the insurance policy on March 13, 2007 despite the fact that it did not receive payment from defendant until May 2, 2007.

30.     Even though the insurance never lapsed as Allstate renewed the policy prior to receiving payment from defendant, defendant still attempted to force place insurance on the Evert property.

31.     For the property on Victory Street, defendant first sent notice that there was no proof of insurance even though it was responsible for paying the insurance premium. After again providing proof of insurance, defendant sent a letter dated May 9, 2007 that its records where updated to reflect that an Allstate Policy is in effect from April 2007 through April 2008.

32.     On May 11, 2007 defendant sent notice that it received the proof of insurance for the Victory property but that there was a lapse in insurance so plaintiffs owed a prorated forced

4

placed insurance fee.

33.     On May 24, 2007, plaintiffs provided a letter via facsimile from Allstate that the Victory property has never had an insurance lapse.   The Allstate letter set out the insurance history for the property by date and policy number.

34.     On May 25, 2007, defendant sent a letter stating that it has forced place insurance for the Victory property for a period of March 2007 through March 2008.  In doing so, it charged plaintiffs a $918.00 premium despite the fact that its May 9, 2007 and May 11, 2007 letters acknowledge there is insurance on the property.

35.     Defendant also attempted to force place insurance on the 78th street property.

**NOTICES OF DEFAULT**

36.     At the same time as defendant was trying to wrongfully force place insurance on plaintiff, it was sending notices that plaintiffs were in default of their mortgages

37.     Plaintiffs were unable to resolve the various mortgage errors with defendant after numerous telephone calls, e-mails and facsimiles.

38.     On June 1, 2007, plaintiffs sent a facsimile that they hired an attorney and authorized defendant to discuss all issues with their attorney, Mark Sansonetti.

39.     On June 4, 2007, Mr. Sansonetti sent a letter via facsimile and certified mail to American Home Mortgage.  The letter listed the Bilek's name and each loan number.

40.     The letter was received by defendant via facsimile on June 4, 2007 and via certified letter on June 8, 2007.

41.     Mr. Sansonetti's letter notified defendant of the forced placed insurance errors, misapplication of payments, accounting errors and requested statements to bring the loans current.  He then attached an accounting of each of the four loans which demonstrated that plaintiffs

5

made all of their monthly payments.

42.     As of the date of filing this lawsuit, Defendant has not acknowledged this

letter or corrected the accounts.

43.     Instead, defendant claims plaintiffs are in default and have returned some

mortgage payments while cashing others.

COUNT I -- CRANSTON-GONZALES AMENDMENT

44.     Plaintiffs incorporate ¶¶1-43.

45.     The Cranston-Gonzales amendment to the Real Estate Settlement Procedures

Act, 12 U.S.C. §2605(e), provides:

> **(e) Duty of loan servicer to respond to borrower inquiries.**
>
> > **(1) Notice of receipt of inquiry.**
> >
> > > **(A) In general. If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.**
> > >
> > > **(B) Qualified written request. For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that–**
> > >
> > > > **(I) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and**
> > > >
> > > > **(ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.**
> >
> > **(2) Action with respect to inquiry. Not later than 60 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any**

borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall–

> (A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);
> (B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes–
>
>> (I) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and
>>
>> (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or
>
> (C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes–
>
>> (I) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and
>>
>> (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

(3) Protection of credit rating. During the 60-day period beginning on the date of the servicer's receipt from any borrower of a qualified written request relating to a dispute regarding the borrower's payments, a servicer may not provide information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency (as such term is defined under section 603 of the Fair Reporting Act [15 USC §1681a]).

46.     The various faxes sent by plaintiffs and Mr. Sansonetti are qualified written

requests as it contains "...a statement of the reasons for the belief of the borrower, to the extent

7

applicable, that the account is in error <u>or</u> provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. §2605(e)(1)(B).

47.     American Home Mortgage violated §2605(e)(1)(A) by failing to acknowledge certain of plaintiffs' letters within 20 business days. These letters were qualified written requests as defined by RESPA.

48.     American Home Mortgage violated §2605(e)(2)(A)and(B) by failing to take corrective action, required by §2605(e)(2)(A)and(B) in regards to letters it received.

49.     American Home Mortgage violated §2605(e)(2)(c) by reporting plaintiffs as delinquent to a credit bureau or bureaus within 60 days from receiving plaintiffs letters.

50.     12 U.S.C. §2605(f) provides:

**(f) Damages and costs. Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts:**

> **(1) Individuals. In the case of any action by an individual, an amount equal to the sum of--**
>
> > **(A) any actual damages to the borrower as a result of the failure; and**
> >
> > **(B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $ 1,000.**
>
> **(3) Costs. In addition to the amounts under paragraph (1) or (2), in the case of any successful action under this section, the costs of the action, together with any attorneys fees incurred in connection with such action as the court may determine to be reasonable under the circumstances.**

51.     As a result of American Home Mortgage's violating §2605(e) plaintiffs attempts to refinance their home loan have been hindered, their credit rating has been damaged, are in constant fear that they will lose their home, and suffered extreme emotional distress.

8

WHEREFORE, plaintiffs request that the Court enter judgment in favor of plaintiffs and against defendant for:

       (1)    Statutory damages for each violation as provided in 12 U.S.C. §2605(f).

       (2)    Actual damages.

       (3)    Attorney's fees, litigation expenses and costs pursuant to 12 U.S.C. §2605(f).

       (4)    Such other or further relief as the Court deems appropriate.

## COUNT II –BREACH OF CONTRACT

52.    Plaintiffs incorporate ¶¶1-44.

53.    Plaintiffs executed a Note and Mortgage for each of the four loans, which required them to make monthly mortgage payments.

54.    American Home Mortgage is responsible for accepting the monthly mortgage payments and applying those funds as set out in the Note including paying escrow amounts.

55.    At all times, plaintiffs timely made their monthly mortgage payments prior to receiving the default notices.

56.    American Home Mortgage breached the contract by force placing insurance, misapplying payments and wrongfully reporting plaintiffs as late to the credit bureaus.

57.    Plaintiffs were damaged as a result.

WHEREFORE, plaintiffs request that the Court enter judgment in favor of plaintiffs and against defendant:

       (1)    Actual damages.

9

(2)    A declaration that Plaintiffs are not in default of their loans.

(3)    Such other or further relief as the Court deems appropriate.

Respectfully submitted,
Plaintiffs

By: _____
        Their Attorney

Keith J. Keogh
Alexander Burke
Law Offices of Keith J. Keogh, LTD.
227 W. Monroe Street, Suite 2000
Chicago, Il 60606
312.726.1092
312.726.1093 (fax)

**JURY DEMAND**
Plaintiffs demand trial by jury.

_____
Keith J. Keogh

10