**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CHRISTOPHER BILEK and MARY BILEK, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) Case No. 07 C 4147 |
| BANK OF AMERICA, N.A., for itself and as successor to COUNTRYWIDE BANK FSP and COUNTRYWIDE HOME LOANS SERVICING, L.P., REAL TIME RESOLUTIONS, INC., and AMERICAN HOME MORTGAGE SERVICING, INC., | ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

On February 25, 2010, Plaintiffs Christopher and Mary Bilek (the "Bileks") filed the present eight-count Second Amended Complaint against various Defendants, including American Home Mortgage Servicing, Inc. ("AHMSI"), for violating the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq.* (Count IV). *See* 28 U.S.C. § 1331. Based on the Court's supplemental jurisdiction, the Bileks also allege state law claims of breach of contract (Count V) and negligence/gross negligence (Count VI) against AHMSI. *See* 28 U.S.C. § 1367(a).

Before the Court is AHMSI's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c). For the following reasons, the Court grants AHMSI's summary judgment motion as to the Bileks' RESPA claim as alleged in Count IV and dismisses the RESPA claim with prejudice. In addition, the Court declines to exercise its supplemental jurisdiction over the

Bileks' state law claims as alleged in Counts V and VI of the Second Amended Complaint because the Court is dismissing with prejudice the Bileks' claim over which the Court has original jurisdiction. *See* 28 U.S.C. § 1367(c)(3).

## BACKGROUND

### I. Northern District of Illinois Local Rule 56.1

Northern District of Illinois Local Rule 56.1 assists the Court by "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with admissible evidence." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000). Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Cracco v. Vitran Exp., Inc.,* 559 F.3d 625, 632 (7th Cir. 2009). "The opposing party is required to file 'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." *Id.* (citing N.D. Ill. R. 56.1(b)(3)(B)). Also, Local Rule 56.1(b)(3)(C) requires the nonmoving party to present a separate statement of additional facts that require the denial of summary judgment. *See Ciomber v. Cooperative Plus, Inc.,* 527 F.3d 635, 643-44 (7th Cir. 2008).

Accordingly, pursuant to the Local Rules, the Court will not consider any additional facts that the Bileks proposed in their Local Rule 56.1(b)(3)(B) Response, but instead must rely on their Local Rule 56.1(b)(3)(C) Statement of Additional Facts when making factual determinations. *See id.* at 643; *see also Cichon v. Exelon Generation Co., L.L.C.,* 401 F.3d 803, 809 (7th Cir. 2005) ("Local Rule 56.1 *requires specifically* that a litigant seeking to oppose a

motion for summary judgment file a response that contains a separate 'statement ... of any additional facts that require the denial of summary judgment.'") (emphasis in original). Likewise, the Court will not consider any additional facts AHMSI sets forth in its responses to the Bileks' Local Rule 56.1(b)(3)(C) Statement of Additional Facts, especially because the Bileks have had no opportunity to respond. *See Ciomber,* 527 F.3d at 643 ("court does not abuse its discretion when it opts to disregard facts presented in a manner that does follow the Rule's instructions").

The purpose of Rule 56.1 statements is to identify the relevant admissible evidence supporting the material facts, not to make factual or legal arguments. *See Cady v. Sheahan,* 467 F.3d 1057, 1060 (7th Cir. 2006) ("statement of material facts did [] not comply with Rule 56.1 as it failed to adequately cite the record and was filled with irrelevant information, legal arguments, and conjecture"). The requirements for responses under Local Rule 56.1 are "not satisfied by evasive denials that do not fairly meet the substance of the material facts asserted." *Bordelon,* 233 F.3d at 528. Also, the Court may disregard statements and responses that do not properly cite to the record. *See Cichon,* 401 F.3d at 809-10; *see also Raymond v. Ameritech Corp.,* 442 F.3d 600, 604 (7th Cir. 2006) ("district courts are entitled to expect strict compliance with Local Rule 56.1"). With these standards in mind, the Court turns to the relevant facts of this case.

## II.     Relevant Facts

### A.     Parties

Christopher and Mary Bilek are a married couple, who reside in Bridgeview, Illinois. (R. 152, Def.'s Rule 56.1 Stmt. Facts ¶ 1.) AHMSI is a Delaware corporation that services mortgage loans and was originally incorporated as AH Mortgage Acquisition Co., Inc., a Delaware

corporation ("Acquisition Co."). (*Id*. ¶ 2.) In September 2007, Acquisition Co. entered into an agreement with American Home Mortgage Investment Corp. and several of its affiliates (collectively "American Home") to purchase substantially all of the servicing assets from American Home, including from American Home Mortgage Servicing, Inc., a Maryland Corporation ("AHM"). (*Id*.) Acquisition Co. closed the transaction on April 11, 2008 and as part of the acquisition, Acquisition Co. officially changed its name to American Home Mortgage Servicing, Inc. ("AHMSI") and AHM changed its name to AHM SV, Inc. (*Id*.) AHMSI is not affiliated with or owned by AHM or American Home. (*Id*.)[1]

B.    **The Bridgeview Note and Mortgage**

On December 21, 2005, the Bileks re-financed the mortgage for their residence at 8417 South 78th Avenue, Bridgeview, Illinois ("Bridgeview Property") by Christopher Bilek signing an adjustable rate note with AHM for $262,000.00 under loan number ***5388 ("Bridgeview Loan"). After AHMSI completed its purchase of the servicing rights in April 2008, it changed the Bridgeview Loan number to ***0339. (*Id*. ¶ 5.) Under the Bridgeview Note, Christopher Bilek agreed to make monthly payments on the first day of each month consisting of principal, interest, other charges including taxes, insurance, and late charges – with the payments applied to interest first. (*Id*. ¶ 6.) Also, under the Bridgeview Note, Christopher

---

[1] In response to AHMSI's Local Rule 56.1 Statement of Facts, Plaintiffs object to AHMSI's reliance upon the declaration of Antoinette Overfield – who was AHMSI's Federal Rule of Civil Procedure Rule 30(b)(6) deponent – because Overfield avers to facts that are not based on her own personal knowledge. *See McGowan v. Deere & Co.*, 581 F.3d 575, 580 (7th Cir. 2009). Contrary to Plaintiffs' argument, Overfield, as AHMSI's Senior Default Litigation Specialist, not only had personal knowledge concerning her averments, but she also had access to AHMSI's files on the Bileks' loans that included account files provided by previous servicers. *See, e.g., Jenkins v. Heintz,* 124 F.3d 824, 831 (7th Cir. 1997) (personal knowledge of business records can be inferred from declarant's position with company).

Bilek agreed to pay late charges of 5% of the amount of the overdue payment of principal and interest if the note holder had not received the full monthly payment 15 days after the due date. (*Id*. ¶ 7.) Further, Christopher Bilek agreed that: "If I do not pay the full amount of each monthly payment on the date it is due, I will be in default." (*Id*. ¶ 8.) Christopher Bilek and Mary Bilek signed the mortgage for the Bridgeview Property ("Bridgeview Mortgage") and the first monthly mortgage payment for the Bridgeview Loan was due on February 1, 2006. (*Id*. ¶¶ 9, 10.) On June 28, 2007, AHM sent the Bileks a default letter informing them that they had defaulted on their mortgage of the Bridgeview Property. (*Id*. ¶ 33.)

        C.        **The Streator Notes and Mortgages**

On March 13, 2006, the Bileks purchased an investment property at 405 North Everett Street, Streator, Illinois ("Streator Property") by Christopher Bilek taking out adjustable rate notes for two loans: (1) the first lien loan for $64,000.00 under loan number ***9762 ("First Streator Loan and Note") and (2) the second lien loan for $23,000.00 under loan number ***9769 ("Second Streator Loan and Note"). (*Id*. ¶ 12.) Under the First Streator Note, Christopher Bilek agreed to make monthly payments on the first day of each month consisting of principal, interest, and other charges with the payments being first applied to interest. (*Id.* ¶ 13.) Also under the First Streator Note, Christopher Bilek agreed to pay late charges of 5% of the amount of the overdue payment of principal and interest if the note holder had not received the full monthly payment 15 days after the due date. (*Id.* ¶ 14.) Christopher and Mary Bilek signed the mortgage for the First Streator Loan and the first monthly mortgage payment for the First Streator Loan was due on May 1, 2006. (*Id*. ¶¶ 15, 17.) Under the First Streator Note, Christopher Bilek agreed that: "If I do not pay the full amount of each monthly payment on the

5

date it is due, I will be in default." (*Id.* ¶ 16.) AHM serviced the First Streator Loan from the time of closing until the servicing rights were sold to AHMSI in April 2008, after which AHMSI changed the loan number for the First Streator Loan to ***2624. (*Id.* ¶ 18.) On July 10, 2007, AHM sent a letter stating that the First Streator Loan account had been forward to a foreclosure attorney. (*Id.* ¶ 40.)

Under the Second Streator Note, Christopher Bilek agreed to make monthly payments on the first day of each month consisting of principal, interest, and other charges with the payments being first applied to interest. (*Id.* ¶ 21.) Christopher Bilek's first monthly mortgage payment for the Second Streator Loan was due on May 1, 2006. (*Id.* ¶ 22.) In addition, under the note for the Second Streator Loan, Chris Bilek agreed to pay late charges of 5% of the amount of the overdue payment of principal and interest if the note holder had not received the full monthly payment 10 days after the due date. (*Id.* ¶ 23.) Also, under the note for the Second Streator Loan, Christopher Bilek agreed that: "If I do not pay the full amount of each monthly payment on the date it is due, I will be in default." (*Id.* ¶ 24.) On May 10, 2007, AHM sent a default letter to the Bileks informing them that they had defaulted on the Second Streator Loan. (*Id.* ¶ 39.)

### D. Foreclosure Proceedings

On July 13, 2007, Codilis & Associates, P.C. ("Codilis") – the law firm that AHM hired to file foreclosure lawsuits – mailed to the Bileks a foreclosure notice for the Streator Property. (*Id.* ¶ 42.) On August 1, 2007, Codilis sent the Bileks a letter notifying them that it would be filing a foreclosure lawsuit on the Bridgeview Property. (*Id.* ¶ 45.) Thereafter, on September 26, 2007, Codilis filed a foreclosure lawsuit against the Bileks for the Bridgeview Loan in Cook

County Circuit Court, Case No. 07 CH 27202 ("Bridgeview Foreclosure"). (*Id*. ¶ 46.) On October 2, 2007, Codilis filed a foreclosure lawsuit against the Bileks for the First Streator Loan in the Circuit Court for the 13th Judicial Circuit in LaSalle County, Ottawa, Illinois, Case No. 07 CH 664 ("Streator Foreclosure"). (*Id*. ¶ 47.) To date, the Bridgeview and Streator foreclosure lawsuits remain pending. (*Id*. ¶ 65.)

Meanwhile, on July 23, 2007, the Bileks filed the present federal lawsuit against AHM alleging RESPA violations and common law breach of contract. (*Id*. ¶ 44.) The Bileks did not add AHMSI as a Defendant to this lawsuit until December 14, 2009 when they filed their First Amended Complaint. (*Id*. ¶ 71.) On February 25, 2010, the Bileks filed the present Second Amended Complaint. (*Id*. ¶ 72.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)(2). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the

adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted); *see also* Fed.R.Civ.P. 56(e)(2) (requiring adverse party to "set out specific facts").

**ANALYSIS**

**I.      RESPA Claim – Count IV**

In Count IV of their Second Amended Complaint, the Bileks allege that AHMSI violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq.,* as to the Bridgeview Property.[2] "RESPA is a consumer protection statute that regulates the real estate settlement process, including servicing of loans and assignment of those loans." *Catalan v. GMAC Mortgage Corp.,* 629 F.3d 676 , 680 (7th Cir. 2011). "The statute imposes a number of duties on lenders and loan servicers" including that "loan servicers respond promptly to borrowers' written requests for information." *Id.* (citing 12 U.S.C. § 2605(e).) Specifically, if "any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information *relating to the servicing of such loan*, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days." 12 U.S.C. § 2605(e)(1)(A) (emphasis added).   RESPA defines the term "servicing" as:

> receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 2609 of this title, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.

---

[2] RESPA does not cover the Streator Property because it is a commercial investment property. *See* 12 U.S.C. § 2606(a)(1) (RESPA "does not apply to credit transactions involving extensions of credit ... primarily for business, commercial, or agricultural purposes"). As such, on July 20, 2010, Plaintiffs voluntarily dismissed their RESPA claims relating to the Streator Property. (R. 109.)

8

12 U.S.C. § 2605(i)(3); *see also* 24 C.F.R. § 3500.2(b). Meanwhile, the Seventh Circuit teaches that:

> [I]t takes a "qualified written request" to trigger the loan servicer's duties under RESPA to acknowledge and respond. The statute defines a qualified written request as written correspondence (other than notices on a payment coupon or similar documents) from the borrower or her agent that requests information or states reasons for the borrower's belief that the account is in error. To qualify, the written request must also include the name and account of the borrower or must enable the servicer to identify them.

*Catalan,* 629 F.3d at 680 (internal citation omitted); 12 U.S.C. § 2605(e)(1)(B).

The Bileks base their RESPA claim on two letters written on August 17, 2009 and August 20, 2009. (R. 187, Pls.' Rule 56.1 Stmt. Facts ¶¶ 13, 14; Def.'s Stmt. Facts ¶¶ 66, 67.) AHMSI argues that the August 17 and 20, 2009 letters are not "qualified written requests" because the letters do not relate to the servicing of the Bridgeview Property Loan as defined by RESPA. *See* 12 U.S.C. § 2605(e)(1)(A), (i)(3). Indeed, it is undisputed that the Bridgeview Loan has been in foreclosure proceedings since September 26, 2007 based on the Bileks' alleged default. Thus, AHMSI was no longer "servicing" the Bridgeview Loan as defined by Section 2605(i)(3) when Christopher Bilek wrote the letters in August 2009. *See Daw v. Peoples Bank & Trust Co.,* 5 Fed.Appx. 504, 505, 2001 WL 195077, at *1 (7th Cir. 2001) ("Once [plaintiff] defaulted, there were no longer any scheduled periodic payments to make or to collect."). In fact, Mary Bilek testified that they stopped making payments on the Bridgeview Property in May or June 2007 – well before the August 2009 letters – because she had turned over her accounts to her attorney. (Def.'s Stmt. Facts ¶ 70.)[3] Accordingly, AHMSI was no longer "receiving any

---

[3] Plaintiffs' deny this statement of fact, yet their denial is evasive because it does "not fairly meet the substance of the material facts asserted." *See Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 528 (7th Cir. 2000). More specifically, Plaintiffs failed to address

scheduled periodic payments" on the Bridgeview Loan when Christopher Bilek wrote the August 2009 letters. *See* 12 U.S.C. § 2605(i)(3); 24 C.F.R. § 3500.2(b).

In addition, after the foreclosure action was filed concerning the Bridgeview Property, the Bileks' counsel and AHMSI's counsel directly communicated concerning the Bridgeview Loan. (*Id.* ¶¶ 52, 54, 57.) On April 2, 2008, for example, AHMSI's attorney sent two faxes to the Bileks' attorney providing the Bileks with the AHM loan histories for the Bridgeview Loan and First Streator Loan, escrow account statements for the Bridgeview Loan, and requested copies of the Bileks' cancelled mortgage payment checks so that the attorneys could discuss and determine the status and legitimacy of any payment disputes. (*Id.* ¶ 52.) Thus, by the time Christopher Bilek sent the August 2009 letters, AHMSI's counsel had repeatedly responded to the Bileks' questions about the delinquent payments through their attorney. (*See, e.g.,* Def.'s Stmt. Facts ¶¶ 61, 62.)

Also, the August 17, 2009 and August 20, 2009 letters pertain to AHM's servicing of the Bridgeview (and Streator) Loans and AHM is no longer a Defendant to this lawsuit. Specifically, the August 17, 2009 letter from Christopher Bilek to AHMSI states:

> I am asking that you fix my loan status as not delinquent, and my credit report as not being behind. It has been over two years and my loan or credit still has not been fixed. American Home Mortgage has made numerous servicing errors on our loans. Also they have not paid the taxes in two years on 405 Everett Street, Streator, Illinois. I would like a response as soon as possible.
>
> Please find enclosed a copy of a federal lawsuit filed against American Home Mortgage on July 23, 2007.

(Def.'s Stmt. Facts ¶ 66, Ex. L, August 17, 2009 letter, AHMSI 00841; Pl.'s Stmt. Facts ¶ 13.)

---

Mary Bilek's testimony in which she stated that the situation involving her payments and accounts were in her attorney's hands. (Def.'s Stmt. Facts ¶ 70, Ex. 1, M. Bilek Dep., at 24-25.)

As discussed, the Bridgeview Loan was in foreclosure proceedings at the time Christopher Bilek wrote this letter. Meanwhile, he complains about how AHM serviced the loan and enclosed the original complaint in this lawsuit in which AHM – not AHMSI – was a Defendant. Last, any reference to the Streator Loan is irrelevant because the Streator Property is not covered by RESPA. *See* 12 U.S.C. § 2606(a)(1) (RESPA "does not apply to credit transactions involving extensions of credit ... primarily for business, commercial, or agricultural purposes").

Moreover, the August 20, 2009 letter from Christopher Bilek to AHMSI states in its entirety:

> [I'm] requesting that ahm correct my accounts, delete any negative credit reporting and remove any late fees and forced place [sic] insurance. I am not in default of the loans, but American Home Mortgage made a variety of servicing errors as alleged in the attached complaint. I am asking for a responds [sic] back to me ASAP. Please find enclosed a copy of a federal lawsuit filed against American Home Mortgage on July 23, 2007. Also a copy of my insurance policy's [sic].

(*Id.* ¶ 67; Ex. M, August 20, 2009 letter, AHMSI 00848; Pl.'s Stmt. Facts ¶ 14.) Again, Christopher Bilek is complaining about AHM's servicing of his loans, including the Wateska Loan that concerned force placed insurance.

Based on the undisputed fact that the Bridgeview Loan was in foreclosure proceedings at the time Christopher Bilek wrote August 2009 letters, along with the fact that these letters concern AHM's servicing of the Bridgeview Loan, the Court grants AHMSI's motion for summary judgment as to the Bileks' RESPA claim as alleged in Count IV of the Second Amended Complaint because AHMSI was not servicing the loan – as defined by RESPA – at the time Christopher Bilek sent the letters in August 2009. *See* 12 U.S.C. § 2605(I)(3); 24 C.F.R. § 3500.2(b).

**II.  State Law Claims – Counts V and VI**

In Count V of their Second Amended Complaint, the Bileks allege a common law breach of contract claim and in Count VI, they allege a common law negligence/gross negligence claim pursuant to the Court's supplemental jurisdiction. *See* 28 U.S.C. § 1367(a). The Court, however, declines to exercise its supplemental jurisdiction over these state law claims because the Court is dismissing – with prejudice – the Bileks' claim over which the Court has original jurisdiction against AHMSI, namely, their RESPA claim. *See* 28 U.S.C. § 1367(c)(3). As the Seventh Circuit teaches "[w]hen all federal claims have been dismissed prior to trial, the principle of comity encourages federal courts to relinquish supplemental jurisdiction pursuant to § 1367(c)(3)." *See Hansen v. Board of Trs. of Hamilton Se. Sch. Corp.,* 551 F.3d 599, 607 (7th Cir. 2008); *see also Leister v. Dovetail, Inc.,* 546 F.3d 875, 882 (7th Cir. 2008) ("When the federal claim in a case drops out before trial, the presumption is that the district judge will relinquish jurisdiction over any supplemental claim to the state courts.").

On a final note, although the Court has original jurisdiction over the Bileks' RESPA claim against Defendant Bank of America as alleged in Count I of the Second Amended Complaint, the Bileks' state law claims against AHMSI are not related to the RESPA claim against Bank of America because that claim does not involve the Bridgeview or Streator Properties or Loans. *See* 28 U.S.C. § 1367(a). Instead, the RESPA claim against Bank of America is based on a different set of facts, namely, it involves Bank of America's servicing of another mortgage based on the Bileks' Wateska, Illinois Property as discussed in the Court's January 21, 2011, Memorandum, Opinion, and Order. *See Cadleway Prop., Inc. v. Ossian State Bank,* 478 F.3d 767, 770 (7th Cir. 2007). Therefore, the Bileks' RESPA claim against Bank of

America does not confer supplemental jurisdiction over the Bileks' state law claims against AHMSI.

Therefore, the Court, in its discretion, dismisses without prejudice the Bileks' state law claims as alleged against AHMSI in Counts V and VI of the Second Amended Complaint.

## CONCLUSION

For the foregoing reasons, the Court grants Defendant's Summary Judgment Motion brought pursuant to Federal Rule of Civil Procedure 56(c) as to Plaintiffs' Real Estate Settlement Procedures Act ("RESPA") claim alleged in Count V of the Second Amended Complaint and dismisses this claim with prejudice. The Court declines to exercise its supplemental jurisdiction over Plaintiffs' state law claims as alleged in Counts V and VI of the Second Amended Complaint because the Court is dismissing with prejudice Plaintiffs' claim over which the Court has original jurisdiction. *See* 28 U.S.C. § 1367(c)(3). In addition, because Defendant's motion for sanctions pertains to Plaintiffs' state law claims, the Court denies the motion for sanctions as moot. The Court also denies Plaintiffs' motion to strike certain exhibits and Defendant's motion to strike the affidavit of Keith Keogh as moot.

**Date:** March 3, 2011

                                ENTERED

                                _____
                                **AMY J. ST. EVE**
                                **United States District Court Judge**